[Civ. No. 9135.   Fourth Dist., Div. One.   Feb. 17, 1969.]

ALFRED COPPOTELLI et al., Plaintiffs and Respondents, v. WILLIAM B. DAWSON et al., Defendants and Appellants.

Keith W. Miller for Defendants and Appellants.

James W. Obrien and James Neal for Plaintiffs and Respondents.

BROWN (Gerald), P. J.—The Coppotellis, husband and wife, sued their downhill neighbor, the Dawsons, for breach of a deed restriction in building their home on the side of a steep

hill in Laguna Beach. The court found in plaintiffs' favor on liability issues and the jury assessed $3,000 damages. Defendants appeal, contending the trial court erred: 1) in interpreting the deed restriction; 2) in finding defendants had breached the deed restriction, plaintiffs were damaged and in submitting the damage issue to the jury; 3) and in finding laches, estoppel and unclean hands did not bar plaintiffs' suit.

Plaintiffs built their home on Lot No. 26 in 1959 and 1960. A steep street separated them from Lot No. 4 below. The lowest part of plaintiffs' lot was higher than the highest part of defendants' lot. A deed restriction limited any building to a "single family dwelling not to exceed one story in height."

Because of the steep hill and the feeling by the developers that two story homes, subject to limitation, would enhance values, the deed restriction was amended in 1960 and approved by all owners including plaintiffs to provide: "(1) All said land shall be used for residence purposes only and that no structures shall be erected, altered, placed or permitted on any building site except as follows: (a) As to Lots 1 through 15 inclusive, other than one detached, single family dwelling which may exceed one story in height, provided, however, that the top or higher story shall be on street level or lower and a private garage for no more than two cars."

The lawsuit hinges upon the interpretation of this amended restriction.

In soliciting Mr. Coppotelli's approval of the amendment the developers wrote him calling his attention, by way of introduction, to the original one story height limitation, and said:

"As the property developed, it became apparent that it was unfair to limit the owners of Lots 1-15 to one story in height because they would be building on the 'down' side of a hillside.

"In order to permit the owners of Lots 1-15 to make the maximum utilization of their land and at the same time preserve the character of the neighborhood . . . [t]his Amendment will permit the owners of Lots 1-15 to build downhill for more than one story, provided, however, the top story of any such building shall be at street level or lower."

The Dawsons bought Lot No. 4 in 1961. The top of the curb next to the lowest portion of the lot was at elevation 61.2 feet; the elevation at the top of the lot was 100 feet. The center of the street next to the top of the lot was 100.17 feet.

After obtaining the Architectural Committee's approval of their plans, the Dawsons began building a two story flat roof home on their lot in February 1965, completing it in September 1965. The Coppotellis observed its entire construction. The floor of the upper story was on the level of the upper elevation of the lot, at 100 feet, or in other words it was on or below the street level at that point. The top of the flat roof was at 107.8 feet. The floor of the Coppotelli home was at 116.09 feet or about 8 feet above Dawsons' roof. During the early stages of building, the Coppotellis were shown, by the use of a pole, what the height of the roof would be. They brought no injunction action. Instead, after the home was completed, they filed suit for damages in November 1965 against the Dawsons and the three Architectural Committee members, dismissing later on as to the committee members.

The evidence showed that if a single story home had been placed with its floor at the 100-foot level on defendants' lot there would be no contention of a deed restriction violation; and if plaintiffs' single story house were placed in like position with its higher roof, rather than defendants flat roof, the obstruction to plaintiffs' view would have been considerably increased.

The trial court found and concluded the amended restriction required the second story between the floor and ceiling be entirely below the 100-foot level. The court instructed the jury that on Dawsons' "property there may be erected a single family dwelling in excess of one story only if all portions of the second or any higher story are below the level of the street immediately adjacent to the part in question."

The court found defendants had obtained the Architectural Committee's approval before building; plaintiffs had not obtained such approval when they built; and defendants' architect told plaintiffs in advance of construction the top of defendants' house would be 7½ to 8 feet above the 100-foot level.

Plaintiffs concede the restriction is "inartistically drawn." Any doubt in its meaning should be resolved against the restriction; i.e., most favorably to an unencumbered use of the property, or, in this case, in favor of defendants. (*Smith* v. *North*, 244 Cal.App.2d 245, 248 [53 Cal.Rptr. 94].)

The Dawsons contend the trial court's conclusion the amended deed restriction prohibited the construction of a two story dwelling where "the second story exceeded the level of the street immediately adjacent," is vague since the street is

734

not level; that it is unreasonable and therefore contrary to law. They argue the correct construction of the deed restriction is "the second story can be placed with its floor as high as the highest level of the lot, but no higher than the street adjacent to the highest level of the lot."

The key word of the deed restriction that the second story "shall be on street level or lower" is the word "on." Webster defines "on" as "Indicating position *over* and in contact with that which supports from beneath; as a book lies *on* the table; built *on* an island . . ." (Webster's New Internat. Dict. (2d ed. Unabridged 1954) p. 1701.)

Defendants attack Finding No. 9, "in which the second story was at all points above the level of the adjacent street," correctly stating this is impossible because the floor of the second story was below the level of the street at its highest level next to their property.

The plaintiffs' position is that any interpretation of the deed restriction "other than that given by the trial court would leave this tract without any effective height restrictions."

We believe the defendants complied with the deed restriction. It would be unusual for one searching for a cigar stand on the street level story of a multi-storied building to expect to find it in the basement. The plain and clear meaning of a house on street level is the house stands at street level. It does not mean the top of the roof is at street level. Similarly, a second story on street level means the floor of the second story is at street level. It does not mean the top of the second story is at street level. Here, one of the street levels or elevations is its highest point next to the defendants' lot, which is 100.17 feet. Defendants were entitled to and did put the floor of the second story on this level or below. We need not consider the remaining issues.

The judgment is reversed with directions to enter judgment for defendants.

Coughlin, J., and Whelan, J., concurred.